UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JONES LANG LASALLE BROKERAGE, INC.**, <br><br> *Plaintiff*, <br><br> v. <br><br> **1441 L ASSOCIATES, LLC**, <br><br> *Defendant*. | Civil Action No. 20-3687 (FYP) |

### MEMORANDUM OPINION

Plaintiff Jones Lang LaSalle Brokerage, Inc. ("JLL") and Defendant 1441 L Associates, LLC, d/b/a 1441 L Street Associates, LLC ("1441 L") entered into a leasing agreement, under which JLL secured a tenant for property owned by 1441 L. 1441 L declined to pay JLL the commission contemplated by the parties' contract, and JLL filed the instant lawsuit. 1441 L now moves for summary judgment, arguing that the leasing agreement is void and unenforceable, for failure to comply with statutory requirements. The Court agrees and will therefore grant 1441 L's Motion.

### BACKGROUND

On June 1, 2016, 1441 L entered into an Exclusive Leasing Agreement ("ELA") with JLL. *See* ECF No. 14-1 (Defendant's Statement of Undisputed Material Facts), ¶ 1; ECF No. 16-1 (Plaintiff's Statement of Undisputed Material Facts), ¶ 1; ECF No. 1-3 (Exhibit A, Exclusive Leasing Agreement). Under the ELA, 1441 L engaged JLL as its exclusive broker for the purpose of leasing the property at 1441 L Street, N.W., Washington, D.C. (the "Property"), to third-party tenants. Def. SUMF, ¶ 3; Pl. SUMF, ¶ 3. 1441 L agreed to pay JLL commissions for

any new leases executed by 1441 L with new tenants.  *See* ECF No. 1 (Complaint), ¶ 9; Exclusive Leasing Agreement.

The ELA provided that JLL "may cooperate with cooperating brokers, including representatives of JLL . . . in leasing space within the Property."  *See* Exclusive Leasing Agreement, ¶ 2.1.  Under the ELA, 1441 L would pay JLL and any cooperating broker the "commissions computed in accordance with the rates as set forth in Schedule A to this Agreement."  *Id.*  The Compensation Schedule in the ELA set different levels of payment, depending on whether JLL worked with a cooperating broker.  *See id.*, Schedule A.  In a "Transaction with a Cooperating Broker," JLL would be entitled to a commission of two percent of the aggregate gross lease value.  *See id.*, Schedule A.[1]

In July of 2018, JLL secured RGN-Washington DC XXI, LLC ("Regus") as a tenant for the Property, and a lease agreement was executed between 1441 L and Regus on July 30, 2018.  Def. SUMF, ¶¶ 6–7; Pl. SUMF, ¶¶ 6–7; ECF No. 14-6 (Regus Lease).  JLL represented 1441 L in executing the Regus Lease, while Kevin Brandt, a cooperating broker employed by JLL, represented Regus.  *See* Pl. SUMF, ¶¶ 29–31.  JLL thus acted in a dual capacity as broker for both 1441 L and Regus when those parties entered the Regus Lease.  Def. SUMF, ¶ 17, Pl. SUMF, ¶ 17.[2]

The Regus Lease provided the following disclaimer regarding JLL's dual representation: "Tenant and Landlord understand and agree that [JLL] is representing and acting as the agent for

---

[1] Although the ELA originally covered the period from June 1, 2016, to May 31, 2017, the parties executed an Amendment on July 9, 2018, that extended the term of the ELA through May 31, 2019.  Def. SUMF, ¶ 5; Pl. SUMF, ¶ 5; ECF No. 1-4 (Ex. B, Amendment to ELA).

[2] In connection with the transaction, 1441 L agreed that JLL would receive 100% of the commission ($756,188.26) upon the later of Regus's occupancy of the premises or payment of rent.  Pl. SUMF, ¶ 31.  The two teams within JLL that respectively represented 1441 L and Regus in entering the lease did not share confidential information about the transaction with each other.  *Id.*, ¶ 35.

both Landlord and Tenant, and both parties authorize and consent to such dual agency and waive any conflict of interest which may arise as a result thereof." *See* Regus Lease, ¶ 35.

JLL expected payment of a commission under the ELA for its role in brokering the Regus Lease — a total sum of $780,518.35, representing two percent of the aggregate gross lease value. Compl., ¶ 17. When 1441 L did not pay the commission, JLL sent a demand letter to 1441 L on July 14, 2020. *Id.*, ¶ 21. As of September 23, 2020, JLL alleges that it was owed $832,422.83, a sum that includes interest of 1.5 percent per month on the delinquent payments. *Id.*, ¶¶ 20, 23. JLL filed the instant suit on December 15, 2020, alleging one count of breach contract, based on 1441 L's failure to pay the commission that is allegedly due under the ELA. *Id.*, ¶¶ 26–32.

On October 1, 2021, 1441 L filed a Motion for Summary Judgment, arguing that JLL is not entitled to payment of the commission under the ELA because JLL failed to comply with statutory requirements regarding the disclosure of a dual representative. *See generally* ECF No. 14-1 (Defendant's Motion). Defendant contends that the defective disclosures regarding dual representation render the ELA unenforceable.[3]

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Summary judgment is properly granted against a party who, "after adequate time for discovery and upon motion, . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party

---

[3] Plaintiff filed an Opposition on October 22, 2021, *see* ECF No. 16 (Plaintiff's Opposition); and Defendant filed a Reply on October 28, 2021, *see* ECF No. 17 (Defendant's Reply).

3

bears the burden to demonstrate the "absence of a genuine issue of material fact" in dispute, *id*. at 323, while the nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor, *see Anderson v. Liberty Lobby, Inc.* ("*Liberty Lobby*"), 477 U.S. 242, 248 (1986).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Id.* at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). The district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).

## ANALYSIS

Applicable statutory provisions impose specific and exacting requirements for disclosing a broker's dual representation of both parties to a real estate transaction. 1441 L argues that JLL's failure to comply with those statutory requirements renders the ELA void and unenforceable; and that JLL therefore is not entitled to any commission for brokering the lease between 1441 L and Regus. The Court agrees.

4

**I.     The Brokerage Act**

Chapter 42 of the D.C. Code pertains to a "Real Estate Broker's Duties," and its purpose is to "protect the public against incompetence, fraud, and deception in real estate transactions." D.C. Code § 42-1701 ("Brokerage Act"). Section 1703 enumerates the duties of real estate brokers, salespersons, and property managers, and provides specific protections and requirements regarding dual representation. *Id.* § 42-1703. Courts are especially wary of brokers acting as dual representatives because of the obvious conflict of interest that such an arrangement entails. *See Urban Investments, Inc. v. Branham*, 464 A.2d 93, 96 (D.C. 1983) (where a broker attempts to act for both sides, "he is confronted with the impossible task of securing for each the most advantageous bargain possible" (citation omitted)); *see also* 12 Am. Jur. 2d *Brokers* § 106 (2022) ("As a general rule, a broker does not act in a dual capacity as the representative of both sides to a negotiation" because a broker "must act solely for the benefit of the principal . . . and may not undertake to represent an [adverse] interest."). Because "a broker is charged with protecting and advancing the principal's interests, a broker may not serve both parties to a transaction unless, under certain circumstances, the parties fully and freely have consented to the dual representation." *Jenkins v. Strauss*, 931 A.2d 1026, 1034 (D.C. 2007) (cleaned up); *see Ehlen v. Lewis*, 984 F. Supp. 5, 9 (D.D.C. 1997) ("Where a fiduciary acts in his own interest in dereliction of his beneficiaries' interest, more than some 'by the way' notice is required.").

The provision of the Brokerage Act that specifically addresses dual representatives, D.C. Code § 42-1703(i), requires a broker (or "licensee")[4] to clearly disclose dual representation to the parties to the transaction (the "clients"), and to obtain the consent of the parties in writing:

> (1) A licensee may act as a dual representative only with the written consent of all clients to the transaction. Such written consent and disclosure of the brokerage relationship as required by this section shall be presumed to have been given as against any client who signs a disclosure as provided in this section.
>
> (2) Such disclosure may be given in combination with other disclosures or provided with other information, but if so, the disclosure must be conspicuous, printed in bold lettering, all capitals, underlined, or within a separate box. Any disclosure which complies substantially in effect with the following shall be deemed in compliance with this disclosure requirement.

D.C. Code § 42-1703(i)(1)-(2). The statute then provides a sample form for making the required disclosures and obtaining consent. *Id.* The sample form is titled "Disclosure of Dual Representation." *Id.* The form is intended to be signed by the broker's clients, and states:

> The undersigned understands that the foregoing dual representative may not disclose to either client or such client's designated representative any information that has been given to the dual representative by the other client within the confidence and trust of the brokerage relationship except for that information which is otherwise required or permitted by § 42-1755(f), to be disclosed. The undersigned by signing this notice do hereby acknowledge their informed consent to the disclosed dual representation by the licensee.

*Id.* ("Sample Form").

---

[4]   It is undisputed that JLL is a "licensee" within the meaning of the statute. *See* D.C. Code § 42-1702(7A); Def. Mot. at 7; Pl. Opp. at 13.

## II.     1441 L Did Not Comply with the Brokerage Act

The parties dispute whether JLL complied with the statutory requirements for disclosure of a dual representative.  *See generally* Def. Mot; Pl. Opp.  Defendant 1441 L focuses on subsection (2) of Section 1703(i), which provides that where a disclosure is "given in combination with other disclosures or provided with other information," it must be "conspicuous, printed in bold lettering, all capitals, underlined, or within a separate box."  D.C. Code § 42-1703(i)(2).  1441 L argues that the disclosure of JLL's dual representation in this case did not comply with the statutory requirements because the disclosure was buried within the Regus Lease, *i.e.*, "provided with other information," but it was not bolded, in all capitals, underlined, or in a separate box.  *See* Def. Mot. at 6.  JLL counters that it provided the necessary disclosure in the Regus Lease, and got "written consent of all clients to the transaction" when the parties signed the lease.  *See* Pl. Opp. at 10.

Section 35 of the Regus Lease refers to JLL's dual representation of both parties to the lease.  *See* Regus Lease.  The Section is title "Broker" and states:

> Landlord and Tenant each represent and warrant to the other [that] with the exception of Jones Lang LaSalle ("Broker") who is acting in a dual capacity on behalf of both Landlord and Tenant, they have dealt with no broker, finder or agent in connection with this Lease[.] . . . Landlord shall compensate Broker a commission attributable to this Lease in accordance with the terms of a separate written agreement.  Tenant and Landlord understand and agree that the Broker is representing and acting as the agent for both Landlord and Tenant, and both parties authorize and consent to such dual agency and waive any conflict of interest which may arise as a result thereof.

*See* Regus Lease, ¶ 35.  This provision acknowledges JLL's "dual capacity" and demonstrates the clients' awareness that JLL represented both sides of the real estate transaction; it also confirms the clients' consent to the dual agency and waiver of any conflict of interest.  *Id.*  But Section 35 fails to meet the statutory requirements for "disclosure" of dual representation.  The

7

purported disclosure is not made on the statutorily approved Sample Form, but rather is located on page 51 of a 65-page lease.  Thus, it is "provided with other information" and it therefore "must be conspicuous."  *See* D.C. Code § 42-1703(i)(2).  Yet Section 35 of the Regus Lease is written in the same font size and type as the other sections — it is not "in bold lettering, all capitals, underlined, or within a separate box."  *Id.*  The purported disclosure does not stand out from the other sections of the Regus Lease in any way:  It thus fails to comply with the requirements of the Brokerage Act.

Nor does the Regus Lease contain any provision that "complies substantially in effect" with the Sample Form, which provides an alternative means of meeting the statutory directives.  *Id.* ("Any disclosure which complies substantially in effect with the following [form] shall be deemed in compliance with this disclosure requirement.").  The Sample Form requires the broker to give notice to all parties to the transaction that the "dual representative may not disclose to either client . . . any information that has been given to the dual representative by the other client within the confidence and trust of the brokerage relationship . . . ."  *Id*.  The Regus Lease contains no such language.  Thus, the Regus Lease plainly did not properly disclose JLL's dual representation.[5]

The only other place to look for an appropriate disclosure in this case is the ELA, the leasing agreement between 1441 L and JLL.  The last page of the ELA, titled Exhibit 1, substantially mirrors the Sample From, which was included in the Brokerage Act to facilitate disclosure and consent concerning a dual representative.  *See* Exclusive Leasing Agreement,

---

[5]     1441 L cites *Jenkins* as support for their position.  *See* Def. Mot. at 9.  JLL contends, and the Court agrees, that the facts of *Jenkins* are not completely in line with their position, as in *Jenkins* the dual representation disclosure was oral, while here, there technically was a written disclosure of dual representation.  However, the holding and underlying policy of *Jenkins*, namely that dual representation disclosures must follow statutory requirements to enforce the contract, is relevant to this case.

Exhibit 1; *see also* D.C. Code § 42-1703(i).  But that copy of the Sample Form was never signed — not by 1441 L, JLL, nor Regus.  *See* Def. SUMF, ¶ 16; Pl. SUMF, ¶ 16; *see also* Def. Mot. Ex. A (Declaration of J. Scott Ogden, Agent for 1441 L), ¶¶ 20–22 (stating that Exhibit 1 of the ELA is blank, and 1441 L does not have a signed version of Exhibit 1).  Thus, it is undisputed that the ELA itself also failed to make the proper disclosures.  Because neither the ELA nor the Regus Lease comply with the statutory requirements, there can be no genuine dispute that JLL was not properly disclosed as a dual representative.

### III.  JLL Cannot Recover Its Commission

Having established that the Regus Lease and the ELA failed to provide the necessary disclosures for a dual representative, as required by D.C. Code § 42-1703, the Court must now determine whether, as a matter of law, JLL can enforce the ELA to recover its commission for brokering the Regus Lease.  1441 L argues that because neither the ELA nor the Regus Lease complies with the statute, the ELA is illegal and void.  *See* Def. Mot. at 11.  JLL contends that there is no basis to void the ELA because the parties to the Regus Lease were aware of the dual representation and consented to it in writing.  *See* Pl. Opp. at 17.

The enforceability of the ELA largely turns on the nature of JLL's violation of the Brokerage Act.  "'The general rule is that an illegal contract, made in violation of a statutory prohibition designed for police or regulatory purposes, is void and confers no right upon the wrongdoer.'"  *Perez v. C.R. Calderon Constr., Inc.*, 221 F. Supp. 3d 115, 154 (D.D.C. 2016) (quoting *Hartman v. Lubar*, 133 F.2d 44, 45 (D.C. Cir. 1942)).  Thus, contracts made in violation of a statute "designed to protect the public will usually be considered void and unenforceable." *See Truitt v. Miller*, 407 A.2d 1073, 1079 (D.C. 1979).  "In deciding whether a party can enforce an agreement in spite of his failure to [obtain a license, to register or to comply with a similar

requirement], courts distinguish between requirements that have a regulatory purpose and those that do not." Restatement (Second) of Contracts § 181 cmt. b (1981). A requirement "that has a regulatory purpose may be regarded as sufficiently substantial to preclude enforcement, while the policy behind one that is merely designed to raise revenue will not be." *Id.* Courts have voided contracts based on the violation of a variety of statutes and regulations designed to protect the public. *See, e.g.*, *Capitol Constr. Co. v. Plaza West Coop. Ass'n, Inc.*, 604 A.2d 428, 430 (D.C. 1992) (determining that contractor license requirements are meant to protect the public and a contractor who accepted payments when unlicensed in violation of the regulations could not enforce contract); *Family Constr. v. D.C. Dep't of Consumer & Regulatory Affairs*, 484 A.2d 250, 254 (D.C. 1984) (finding that the Consumer Credit Retail Regulations were designed for the protection of the public, and failure to register in violation of the regulations thus rendered a sales contract void); *Fields v. Hunter*, 368 A.2d 1156, 1159 (D.C. 1977) (holding that a regulation prohibiting the sale of liquor on credit was enacted to protect the public interest, and therefore, a liquor store owner was not entitled to money owed for liquor sold on credit in violation of the regulation).

The Brokerage Act, previously known as the "Real Estate Licensure Act,"[6] was passed to "protect the public against incompetence, fraud and deception in real estate transactions." D.C. Code § 42-1701. The Act applies to "licensees," which are defined as real estate brokers, salespersons, and property managers; and it imposes specific duties on such licensees. *Id.* §§ 42-1702(7A), 42-1703. In particular, the act enumerates the obligations of licensees engaged by sellers, *id.* § 42-1703(a); licensees engaged by buyers, *id.* § 42-1703(b); licensees engaged by landlords to lease property, *id.* § 42-1703(c); licensees engaged by tenants, *id.* § 42-1703(d); and

---

[6]  The District of Columbia Real Estate Licensure Act was previously codified at D.C. Code §§ 45-1921, *et seq.*

licensees engaged to manage real estate, *id.* § 42-1703(e).  The Act requires the disclosure of a brokerage relationship and establishes specific rules for the disclosure of a dual-representation relationship.  *Id.* §§ 42-1703(h), (i).

As previously discussed, the provisions in the Brokerage Act pertaining to dual representation are particularly detailed and exacting.  The legislature even saw fit to enumerate the acceptable means of making disclosures of such arrangements visually prominent, specifying that such disclosures should be "printed in bold lettering, all capitals, underlined, or within a separate box."  *Id.* § 42-1703(i)(2).  This reflects a recognition by lawmakers that dual representation is inherently suspect, due to the broker's inescapable conflict of interest in representing opposing parties to a transaction.  *See supra* Section I; *see also* D.C. Code § 42-1703(c)(1)(B) ("licensee engaged by a landlord shall . . . [p]romote the interests of the landlord."); § 42-1703(d)(1)(B) ("licensee engaged by a tenant shall . . . [p]romote the interests of the tenant.").[7]  To guard against "fraud and deception," the Brokerage Act thus regulates dual-representation arrangements by requiring both clear disclosure of the broker's allegiance to both sides, and written consent by the clients.  *Id.* § 42-1703(i).  There is no doubt that the statutory requirements at issue are designed to protect the public and have a "regulatory purpose."  *See* Restatement (Second) of Contracts § 181; *see also Remsen Partners, Ltd. v. Stephen A. Goldberg Co.*, 755 A.2d 412, 419 (D.C. 2000) ("[T]he Brokerage Act is obviously regulatory in purpose and intended to protect the public.").  As a result, a failure to comply with the dual-

---

[7] The Brokerage Act lays out duties for licensees engaged by a tenant, which include performing "in accordance with the terms of the brokerage relationship" and promoting "the interests of the tenant." *Id.* § 42-1703(d).  Promoting the interests of the tenant includes a duty to (1) seek a "lease at a price with terms acceptable to the tenant;" (2) present "all written offers or counteroffers to and from the tenant;" and (3) disclose to the tenant "material facts related to the property or concerning the transaction of which the licensee has actual knowledge." *Id.* § 42-1703(d)(1)(B).  Duties additionally include maintaining confidentiality of all "personal and financial information," and exercising "ordinary care." *Id.* §§ 42-1703(d)(1)(C)-(D).  Parallel provisions applicable to licensees engaged by landlords to lease property are contained in section 42-1703(c).

11

representation rules of the Brokerage Act renders an agreement unenforceable. *See Stephen A. Goldberg Co. v. Remsen Partners, Ltd.*, 170 F.3d 191, 193 (D.C. Cir. 1999) (affirming a finding that an agreement was unenforceable because it was entered into in violation of the Brokerage Act requirement that real estate brokers be licensed); *Hartman*, 133 F.3d at 45 (a violation of a "statutory prohibition designed for . . . regulatory purposes, is void and confers no right upon the wrongdoer"); *see also Frey v. Fraser Yachts*, 29 F.3d 1153, 1156 (7th Cir. 1994) ("If a broker fails to disclose his dual representation . . . he forfeits his commission.").

Here, there is no dispute that JLL acted as a dual representative with respect to the signing of the Regus Lease: JLL represented both 1441 L as the landlord, and Regus as the tenant. JLL seeks a commission for its role in that transaction, relying on its leasing agreement with 1441 L, the ELA. But as discussed, *supra* Section II, neither the Regus Lease nor the ELA contained the necessary disclosures of JLL's dual representation, and neither 1441 L nor Regus provided proper, written consent. Because such requirements are regulatory in nature and designed to protect the public, JLL cannot enforce the ELA to recover a commission for brokering the Regus Lease. *See Truitt*, 407 A.2d at 1079 (contracts made in violation of a statute "designed to protect the public will usually be considered void and unenforceable").[8]

JLL argues that there is no basis for invalidating the ELA because JLL disclosed the dual representation and secured a waiver from its clients: According to JLL, 1441 L and Regus are sophisticated, licensed actors in the real estate market, who understood and consented to the dual representation. *See* Pl. Opp. at 17. JLL's framing of the facts is accurate. The record does

---

[8] JLL attempts to distinguish the facts of *Sturdza v. United Arab Emirates*, 11 A.3d 251 (D.C. 2011), a case that 1441 L cites for the proposition that JLL cannot recover under the ELA. *See* Pl. Opp. at 15–17. The Court agrees that the facts of this case are distinguishable, as there is no unlicensed contractor as there was in *Sturdza*. But the policy underlying the holding in *Sturdza* — that contracts made in violation of statutes designed to protect the public are voidable — is still applicable to this case. *See Sturdza*, 11 A.2d at 257.

reflect that the parties to the Regus Lease were on actual notice of JLL's dual representation, and that they consented to the arrangement. Indeed, it appears that 1441 L is taking advantage of JLL's technical non-compliance with the law to avoid paying a commission that JLL rightfully earned. Nevertheless, the Brokerage Act requires adherence to the strict disclosure-and-consent provisions related to dual representation, for all the reasons previously discussed. And JLL admits that it, too, is a sophisticated and experienced real estate broker, *see id.*: JLL should have been aware of its obligations under the Brokerage Act. JLL does not identify any authority to support the enforcement of an agreement that does not comply with the rules of dual representation, and the Court is not aware of any such authority. The Court therefore concludes that there is no genuine dispute that the ELA is void and unenforceable as to JLL's claimed commission from brokering the Regus Lease.

## CONCLUSION

For the foregoing reasons, the Court will grant 1441 L's Motion for Summary Judgment. A separate Order will issue this day.

_____
FLORENCE Y. PAN
United States District Judge

Date:   March 23, 2022